**STATE of Tennessee, Appellant,**

**v.**

**Timothy D. HARRIS and Craig
Thompson, Appellees.**

Supreme Court of Tennessee,
at Jackson.

April 15, 1996.

Rehearing Denied June 10, 1996.

Shelby County; Hon. Joseph B. McCartie, Judge.

Charles W. Burson, Attorney General & Reporter, Amy L. Tarkington, Christina S. Shevalier, Assistant Attorneys General, Nashville, Glenn I. Wright, Gerald Harris, Paul F. Goodman, Assistant District Attorneys, Memphis, for appellant.

Harry U. Scruggs, Memphis, David C. Stebbins, Columbus, Ohio, for appellee Harris.

John G. Oliva, Nashville, David C. Stebbins, Columbus, Ohio, Carolyn Watkins, Edward G. Thompson, Assistant Public Defenders, Memphis, for appellee Thompson.

## OPINION

ANDERSON, Chief Justice.

■ The single [1] issue in this consolidated appeal is purely a question of law and requires a determination of whether a remand for resentencing is appropriate when an appellate court in a capital case concludes the sole aggravating circumstance found by the original sentencing jury is legally invalid and sets aside the sentence of death. Because there is no legal principle which precludes the State from seeking the death penalty upon resentencing, a remand for that purpose is appropriate. Accordingly, the Court of Criminal Appeals' judgments modifying the sentences to life imprisonment are reversed and the cases remanded to the respective trial courts for resentencing.

## BACKGROUND

In separate trials in the Shelby County Criminal Court, the defendants, Timothy D. Harris and Craig Thompson, were each convicted of first-degree felony murder during the course of a robbery, and sentenced to death.

As to Harris, the proof introduced by the State established that on the evening of May 29, 1990, Jack Thomas was shot to death as he sat in his car outside his home in Memphis. The incident began when four young men approached Thomas as he was placing some items in his car. At least two of the men were armed. When Thomas realized that the men intended to rob him, he jumped in his car and closed the door. Thomas suffered eight gunshot wounds in the attack, during which the rear window of his car was shattered by gunfire. Thomas's girlfriend, who was inside the house at the time, identified the defendant as one of the four young men she saw approach. She did not see the defendant with a gun, but saw another of the men shoot Thomas four times. While she hid inside the house, three of the men ransacked the bedroom. During this time, Thomas was shot several times at close range. A cellular phone and gold necklace were taken in the robbery. Although Harris admitted participation in the burglary and in planning the robbery, he claimed that he was unarmed and did not shoot Thomas. While the identity of the person who shot Thomas was never definitively established, Harris's fingerprint was lifted from the passenger door of the victim's car. The jury convicted Harris, based on that evidence, of felony

---

1. In its application for permission to appeal the State requested that this Court reconsider its holding in *State v. Middlebrooks*, 840 S.W.2d 317 (Tenn.1992). However, the State in its brief to the Court has expressed its intention to no longer pursue that issue in light of *State v. Bigbee*, 885 S.W.2d 797 (Tenn.1994), which reaffirmed the holding in *Middlebrooks*. In any event, a majority of this Court as presently constituted also reaffirms the holding in *Middlebrooks*.

murder committed during the course of a robbery.[2]

At the sentencing hearing, the State relied on evidence presented during trial and testimony from the victim's mother. Harris testified in his own behalf, admitting that he had instigated the robbery, but claiming that he had never intended that Thomas be shot. He expressed remorse and regret for what happened. The defense also relied on testimony from the defendant's aunt. At the time of the killing, Harris was twenty years old, a high school graduate with no prior criminal record.

Based on the proof, the jury imposed the death penalty after finding that the State had proven, beyond a reasonable doubt that the murder had occurred during the commission of a robbery and that the aggravating circumstance outweighed the mitigating factors.

As to Craig Thompson, the proof introduced at the guilt phase of the trial established that on December 16, 1990, Thompson entered a Delta Express Market in Memphis and shot to death the clerk, Carrie Lee Walker. A second clerk who had fled to the back of the store identified Thompson as a person matching the description of the killer, while a customer identified Thompson as the man who came out of the store with a gun in his hand. In addition, the homicide was videotaped by a security camera, and the jury saw the tape and photographs made from it. Thompson also admitted shooting the clerk to the driver of the get-away car and to a friend, but claimed that the clerk was trying to shoot him. The jury convicted Thompson of felony murder during the commission of a robbery.

At the sentencing hearing, the State relied on the proof presented at trial and in addition, introduced testimony from Walker's sister. Testifying for the defense, Thompson's mother said that he was eighteen or nineteen years old at the time of the killing, had no prior criminal record, and had been a well-behaved honor student from a stable family until he came to Tennessee and joined the Navy at age seventeen.

Based on the proof, the jury imposed the death penalty after finding that the State had proven, beyond a reasonable doubt, that the murder had been committed during the commission of a robbery, and that the aggravating circumstance outweighed the mitigating factors.

Accordingly, during the sentencing phase of each case, the State presented proof to establish the aggravating circumstance that the killing occurred during the course of a robbery. Tenn.Code Ann. § 39–13–204(i)(7) (1991 Repl.).[3]

Each defendant separately appealed to the Court of Criminal Appeals raising numerous issues for review. The intermediate court, in each case, affirmed the conviction, but reversed the sentence of death concluding that the jury's reliance on the felony murder aggravating circumstance at the sentencing hearing was contrary to *Middlebrooks.* In that case, this Court held that, when a defendant is convicted of felony murder, the State's use of felony murder as an aggravating circumstance at the sentencing hearing violates Article I, Section 16, of the Tennessee Constitution because the aggravating circumstance is a duplication of the crime itself and does not narrow the class of death-eligible defendants as is constitutionally required. Reasoning that resentencing is precluded because the sentencing jury relied upon only one aggravating circumstance which was legally invalid to support imposition of the death penalty, the Court of Criminal Appeals modified the sentence in each case to life imprisonment. The State filed applications for permission to appeal, which were granted, and thereafter, the cases were consolidated for hearing and decision. For

---

2. Harris was also convicted of especially aggravated robbery and aggravated burglary. The trial court imposed sentences of twenty-five and six years, respectively, on each of those convictions, which are not at issue in this appeal.

3. The statute provides: "The murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit, any first degree murder, arson, rape, robbery, burglary, theft, kidnaping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb."

the reasons that follow, the judgments of the Court of Criminal Appeals modifying each sentence to life imprisonment are reversed and the cases remanded to the respective trial courts for resentencing.

## DOUBLE JEOPARDY

■ Resolution of the issue in this appeal requires a review of well-settled principles of double jeopardy jurisprudence. The Fifth Amendment to the United States Constitution is applicable to the states through the Fourteenth Amendment Due Process Clause,[4] and provides that no person shall "be subject to the same offense to be twice put in jeopardy of life or limb." Similarly, Article I, Section 10 of the Tennessee Constitution provides "[t]hat no person shall, for the same offence, be twice put in jeopardy of life or limb." The double jeopardy provisions of the state and federal constitutions have heretofore been interpreted as co-extensive.[5] The double jeopardy clauses were

> designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957); *State v. Maupin,* 859 S.W.2d at 315; *State v. Knight,* 616 S.W.2d 593, 595 (Tenn.1981).

■ The double jeopardy guarantee affords three separate constitutional protections against, 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the

same offense. *North Carolina v. Pearce,* 395 U.S. 711, 716, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *State v. Mounce,* 859 S.W.2d 319, 321 (Tenn.1993). In application, these protections forbid retrial of a defendant who has been acquitted and, when a conviction has been set aside because of insufficiency of the evidence, double jeopardy forbids giving the prosecution "another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978).

■ When a defendant obtains a new trial through a successful appeal on some basis other than insufficiency of the evidence, however, double jeopardy does not preclude a retrial of the defendant. *Id.; Ball v. United States,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); *State v. Campbell,* 641 S.W.2d 890, 893 (Tenn.1982). The rationale for allowing retrial in such circumstances was aptly explained in *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), as follows:

> While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the *Ball* principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves

---

**4.** *Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).*

**5.** *State v. Maupin,* 859 S.W.2d 313, 315 (Tenn. 1993); *Lavon v. State,* 586 S.W.2d 112, 114 (Tenn.1979).

defendants' rights as well as society's interest. *Id.*, 377 U.S. at 466, 84 S.Ct. at 1589. Accordingly, no constitutional provision prevents retrial after a reversal for legal error. Moreover, "upon appellate reversal of a conviction the Government is not limited at a new trial to evidence presented at the first trial, but is free to strengthen its case in any way it can by the introduction of new evidence." *Pickens v. State*, 292 Ark. 362, 730 S.W.2d 230, 235 (1987), quoting, *United States v. Shotwell Mfg. Co.*, 355 U.S. 233, 243, 78 S.Ct. 245, 252, 2 L.Ed.2d 234 (1957).

A well-settled corollary of the power to retry a defendant is the power, upon a defendant's reconviction, to impose whatever sentence may be legally authorized, whether or not it is greater than the sentence imposed after the first conviction. *North Carolina v. Pearce*, 395 U.S. at 720, 89 S.Ct. at 2078. Imposition of a particular sentence usually is not regarded as an "acquittal" of another more severe sentence that could have been imposed. Thus, the double jeopardy protection imposes no absolute prohibition on the imposition of a harsher sentence at retrial after a defendant has succeeded in having the original conviction set aside. *North Carolina v. Pearce*, 395 U.S. at 720, 89 S.Ct. at 2078; *United State v. DiFrancesco*, 449 U.S. 117, 133 and 137–38, 101 S.Ct. 426, 435 and 437–38, 66 L.Ed.2d 328 (1980). This principle is generally known as the "clean slate rule" and "rests ultimately on the premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean." *North Carolina v. Pearce*, 395 U.S. at 721, 89 S.Ct. at 2078. Therefore, upon retrial, the constitutional guarantee against double jeopardy does not prohibit imposition of a legally authorized sentence, whether or not it is greater than the sentence imposed after the first conviction.

One exception to the "clean slate rule" has been recognized by the United States Supreme Court in the context of bifurcated capital prosecution and sentencing proceedings. In *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the United States Supreme Court held that,

a defendant sentenced to life imprisonment rather than death is protected by the Double Jeopardy Clause against re-imposition of the death penalty when the defendant obtains a reversal of the underlying conviction, and is retried and reconvicted. In so holding, the Court acknowledged the "clean slate" rule, but determined that the rule is "inapplicable whenever a jury agrees or an appellate court decides that the prosecution has not proved its case." *Id.*, 451 U.S. at 443, 101 S.Ct. at 1860. Although recognizing that it is usually "impossible to conclude that a sentence less than the statutory maximum 'constitute[s] a decision to the effect that the government has failed to prove its case,'" *id.*, (quoting *Burks v. United States*, 437 at 15, 98 S.Ct. at 2149), the Court found that Missouri, by "enacting a capital sentencing procedure that resembles a trial on the issue of guilt or innocence, ... *explicitly requires* the jury to determine whether the prosecution has 'proved its case.'" *Id.*, 451 U.S. at 444, 101 S.Ct. at 1861 (emphasis in original). Therefore, the Court determined that the jury's decision to sentence Bullington to life imprisonment after his first conviction amounted to an "acquittal" of the death penalty under the Double Jeopardy Clause which eliminated death from the punishment options available at resentencing.

Likewise, in *Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984), the Court applied the *Bullington* principle, and held that resentencing is barred following imposition of a life sentence, even if imposition of the life sentence is based on legal error. In *Rumsey*, an Arizona trial judge erroneously construed a statutory aggravating circumstance, concluded that the State had failed to prove the existence of an aggravating circumstance, and imposed a life sentence. Concluding that the trial court had misconstrued the aggravating circumstance, the Arizona Supreme Court set aside the life sentence and remanded for resentencing.

At the resentencing hearing, the State again sought, and this time, obtained the death penalty, but on appeal, the Arizona Supreme Court, in light of *Bullington*, determined that imposition of the death sentence

violated the constitutional prohibition against double jeopardy.

The United States Supreme Court affirmed, concluding that the "initial sentence of life imprisonment was undoubtedly an acquittal on the merits of the central issue in the proceeding—whether death was the appropriate punishment...." *Arizona v. Rumsey*, 467 U.S. at 211, 104 S.Ct. at 2310. In so holding, the Court emphasized that the double jeopardy effects of the judgment that amounted to an acquittal on the merits was not altered because imposition of the life sentence resulted from an erroneous interpretation of governing legal principles. *Id.*

More recently, in *Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986), the scope and application of the *Bullington* rule was further delineated. In that case, the State argued at the penalty phase of the defendants' capital murder trial the existence of two aggravating circumstances: (1) the murder was committed for pecuniary gain; and (2) the murder was especially heinous, cruel or depraved. The sentencing judge imposed the death penalty, finding the heinous, cruel, or depraved factor to exist, but rejecting the pecuniary gain factor because, as in *Rumsey*, the sentencing judge interpreted it as only applying to contract killings. In the event that limiting construction was inaccurate, however, the sentencing judge in *Poland* alternatively found the evidence sufficient to establish the pecuniary gain aggravating circumstance. *Id.*, 476 U.S. at 149, 106 S.Ct. at 1752.

On appeal, the Arizona Supreme Court reversed the convictions because of trial error and remanded for a new trial. With regard to the penalty phase, the court found the evidence insufficient to support the heinous, cruel, or depraved circumstance, but held that the pecuniary gain factor was not limited to contract killings and determined that factor could be considered at resentencing.

The defendants were retried, reconvicted and again sentenced to death. The trial judge found both the especially heinous, cruel or depraved, and the pecuniary gain aggravating circumstances to be present. On appeal, the defendants challenged the State's use of the pecuniary gain factor, which was not found at the original trial. While again finding the evidence insufficient to support the heinous, cruel or depraved factor, the Arizona Supreme Court upheld the pecuniary gain factor and, after weighing the aggravating and mitigating circumstances, concluded that the death penalty was appropriate.

The United States Supreme Court granted review and rejected the defendants' contention that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution constitutes an acquittal of that circumstance for double jeopardy purposes. *Poland v. Arizona*, 476 U.S. at 155, 106 S.Ct. at 1755. The *Poland* court reiterated that the proper inquiry under *Bullington* is whether the sentencer or reviewing court has concluded that the prosecution failed to prove its case that death is the appropriate punishment. *Id.* The Court refused to extend *Bullington* and view the capital sentencing proceeding as a set of mini trials on the existence of each aggravating circumstance, *id.*, 476 U.S. at 156, 106 S.Ct. at 1755, but instead concluded that

[a]ggravating circumstances are not separate penalties or offenses, but are standards to guide the making of the choice between the alternative verdicts of death or life imprisonment. Thus, under Arizona's capital sentencing scheme, the judge's finding of any particular aggravating circumstance does not of itself "convict" a defendant (i.e., require the death penalty), and the failure to find any particular aggravating circumstance does not "acquit" a defendant (i.e., preclude the death penalty).

It is true that the sentencer must find *some* aggravating circumstance before the death penalty may be imposed, and that the sentencer's finding, albeit erroneous, that no aggravating circumstance is present is an "acquittal" barring a second death sentence proceeding. This is because the law attaches particular significance to an acquittal. To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly su-

perior resources, might wear down the defendant so that even though innocent he may be found guilty. This concern with protecting the finality of acquittals is not implicated when, as in these cases, a defendant is sentenced to death, *i.e.,* "convicted." There is no cause to shield such a defendant from further litigation; further litigation is the only hope he has. The defendant may argue on appeal that the evidence presented at his sentencing hearing was as a matter of law insufficient to support the aggravating circumstances on which his death sentence was based, but the Double Jeopardy Clause does not require the reviewing court, if it sustains that claim, to ignore evidence in the record supporting another aggravating circumstance which the sentencer has erroneously rejected. Such a rule would have the odd and unacceptable result of requiring a reviewing court to enter a death penalty "acquittal" even though that court is of the view that the State has proved its case.

*Poland v. Arizona,* 476 U.S. at 156–57, 106 S.Ct. at 1755–56 (emphasis in original) (internal quotations and citations omitted).

Based on that reasoning, the Court in *Poland* concluded that the trial court's original rejection of the pecuniary gain factor did not bar resentencing since neither the sentencing judge nor the reviewing court found the evidence legally insufficient to justify imposition of the death penalty. Therefore, the Double Jeopardy Clause "did not foreclose a second sentencing hearing at which the 'clean slate' rule applied." *Poland v. Arizona,* 476 U.S. at 157, 106 S.Ct. at 1756.

After consideration of the foregoing authorities, we conclude that resentencing in these consolidated cases is not prohibited by either the state or federal constitutional prohibition against double jeopardy. The determinative inquiry under *Bullington, Rumsey,* and *Poland,* is: Were the defendants acquitted on the merits of the central issue in the proceeding—whether death is the appropriate punishment? The answer to that inquiry is clear. The dissent fails to recognize that unlike *Bullington* or *Rumsey,* the defendants in this appeal were initially sentenced to

death, and have not been acquitted of the death penalty. The State did not fail to prove its case that death is the appropriate punishment. The error present is a legal error, not a matter of insufficient evidence.

Because there has been no acquittal, a remand for resentencing is not precluded. As the United States Supreme Court recognized, a corresponding interest to the fair trial right of an accused is society's interest in punishing one who has been found guilty at trial. *United States v. Tateo,* 377 U.S. at 466, 84 S.Ct. at 1589. Both these defendants have been convicted of crimes for which society, through its elected officials, has seen fit to provide death as a punishment option. Both defendants did in fact receive the death penalty. Accordingly, the significance society attributes to an acquittal is not involved in this appeal, and resentencing is not precluded.

 In so holding, we join the majority of jurisdictions which have adopted the analysis of the U.S. Supreme Court in *Poland,* and concluded that the capital sentencing trial is not a series of mini trials, and there is no such thing as an acquittal from an aggravating circumstance. *See e.g. Pickens v. State,* 292 Ark. 362, 730 S.W.2d 230 (1987); *Preston v. State,* 607 So.2d 404 (Fla.1992); *Zant v. Redd,* 249 Ga. 211, 290 S.E.2d 36 (1982); *State v. David,* 468 So.2d 1133 (La.1985); *Commonwealth v. Zook,* 532 Pa. 79, 615 A.2d 1 (1992); *State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991); *Hopkinson v. State,* 664 P.2d 43 (Wyo.1983); *contra State v. Silhan,* 302 N.C. 223, 275 S.E.2d 450 (1981); *State v. Biegenwald,* 110 N.J. 521, 542 A.2d 442 (1988). Accordingly, the State is free, at resentencing to introduce proof of any aggravating circumstance which is otherwise legally valid.

The dissent would adopt a rule prohibiting the use of new aggravating circumstances at resentencing in all cases except the rare case in which the defendant is convicted of a violent felony *after* the original sentencing hearing. According to the dissent, the rule is based on due process and fundamental fairness. The dissent's approach, however, is patterned on a decision of the New Jersey Supreme Court, *State v. Biegenwald, supra.* The fundamental fairness language in that

case was dicta, and as such is not binding on that court or precedent for any other court. In fact, the New Jersey Supreme Court, in *State v. Koedatich,* 118 N.J. 513, 572 A.2d. 622 (1990), retreated from its *Biegenwald* language and held that the State may, at resentencing, rely upon aggravating circumstances not found by the jury in the initial sentencing hearing.

Finally, and perhaps most importantly, the principles announced by dicta in that decision, and embraced by the dissent in this case, have been adopted by no other court, and represent an isolated minority view which should not be adopted as the law in Tennessee. The administration of justice in this State is better served by allowing resentencing in accordance with the analysis contained within the United States Supreme Court decisions previously discussed. *See also State v. Miller,* 771 S.W.2d 401, 403 (Tenn.1989) (discussing the *Poland* decision).[6]

 Moreover, the State is not precluded by Tenn.R.Crim.P. 12.3 from relying on new aggravating circumstances at resentencing. Notice such as that rule requires is not constitutionally mandated, though it is the better practice. *State v. Berry,* 592 S.W.2d 553, 562 (Tenn.1980). The purpose of the rule is to ensure that the defense receives timely notice to enable adequate trial preparation. In the context of a capital resentencing hearing wherein the State intends to rely on aggravating circumstances different from those relied upon at the original trial, that purpose is fulfilled by requiring the State to file a new notice under Tenn. R.Crim.P. 12.3, which informs the defense of its intent to seek the death penalty, including the aggravating circumstances upon which the State intends to rely, thirty days prior to the resentencing hearing. *Cf. State v. Hines,* —— S.W.2d —— (Tenn.1995) (Holding that a new notice is not required before resentenc-

ing if the State intends to rely upon only those aggravating circumstances noticed before the first trial).

 As this Court previously has observed, "[o]n a resentencing hearing, the rule of evidence with regard to the only issue before the jury remains the same—both the State and the defendant may introduce any evidence relating to the circumstances of the crime, relevant aggravating circumstances or any mitigating circumstances, so that the jury will have complete information relevant to punishment. *State v. Bigbee,* 885 S.W.2d 797, 813 (Tenn.1994). Simply stated, if the offered evidence bears on punishment, it is admissible." *State v. Teague,* 897 S.W.2d 248, 250 (Tenn.1994).

 At resentencing, the defendant is not limited to proof of mitigating circumstances presented in the initial sentencing hearing. *Id.* Neither is the State limited, by constitutional restrictions, or Tenn. R.Crim.P. 12.3, to evidence presented at the first trial, but is free to strengthen its case in any way it can by the introduction of new evidence. *Pickens v. State,* 730 S.W.2d at 235, (quoting, *United States v. Shotwell Mfg. Co.,* 355 U.S. at 243, 78 S.Ct. at 252.) Any other rule would defeat the basic premise of capital sentencing proceedings which are theoretically designed to allow the sentencer to consider all relevant evidence regarding the nature of the crime and the character of the defendant to determine the appropriate punishment. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *see also Preston v. State,* 607 So.2d at 409.

### CONCLUSION

For the reasons stated herein, the Court of Criminal Appeals' judgments modifying the sentences in each case to life imprisonment are reversed and each cause is remanded to the respective trial courts for a resentencing

---

**6.** Contrary to the dissent's characterization of this Court's decision in *State v. Branam,* 855 S.W.2d 563 (Tenn.1993), we have never previously held that resentencing is precluded in circumstances such as those presented in this appeal. Relief was granted in *Branam* solely because the death sentence was disproportionate under both the state and federal constitu-

tions. We simply held that under state and federal law "death is a disproportionate penalty ... where it is imposed against a defendant solely for participation in a robbery in which another robber takes life, without proof that the defendant himself attempted or intended to kill or intended that lethal force be used." *Id.,* at 570.

hearing in which the State will be free to again seek the death penalty. Costs of this appeal are taxed equally to the defendants, Timothy D. Harris and Craig Thompson.

DROWOTA, J., and LEWIS, Special Justice, concur.

REID and WHITE, JJ., dissent.

WHITE, Justice, dissenting.

While I agree with the majority's conclusion that the Fifth Amendment to the United States Constitution may not necessarily bar the use of new aggravating circumstances at resentencing, I conclude that Article 1, Section 8 of the Tennessee Constitution and our state's fundamental fairness jurisprudence demand that, in those instances in which the death penalty has been set aside on appeal, the state may rely upon and prove only those aggravating circumstances which were presented to and found by the jury at the original sentencing.[1] Accordingly, I dissent.

I.

Relying on *Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986), the majority concludes that "resentencing in these consolidated cases [presumably based on new aggravating circumstances] is not prohibited by either the state or federal constitutional provision against double jeopardy." While I acknowledge the federal interpretation of the double jeopardy clause that leads to such a conclusion and accordingly base my dissent on the more fundamental constitutional principle of due process, I do not wholeheartedly accept the analysis behind the cases relied on by the majority.

In *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the United States Supreme Court held that in sentencing proceedings that are akin to guilt determinations "the protection afforded by the Double Jeopardy Clause to one acquitted by a jury also is available ... with respect to the death penalty, at ... retrial." 451 U.S. at 446, 101 S.Ct. at 1862. If the state fails to

convince the jury that the death penalty is warranted, defendant has been "acquitted" of that punishment. On retrial, the state may not seek the death penalty. *Arizona v. Rumsey*, 467 U.S. 203, 211, 104 S.Ct. 2305, 2310, 81 L.Ed.2d 164 (1984). Once the jury has refused the state's demand for the death penalty, retrial on that issue is barred even if the conviction is set aside due to legal error, notwithstanding that the legal error may affect the accuracy of the determination. "[T]he fact that 'the acquittal [resulted] from erroneous evidentiary rulings or erroneous interpretations of governing legal principles, ... does not alter [the] essential characteristic [of the acquittal].'" *Id.* (quoting *United States v. Scott*, 437 U.S. 82, 98, 98 S.Ct. 2187, 2197, 57 L.Ed.2d 65 (1978)). Thus, if the jury rejects the sole aggravating circumstance relied upon by the state at the first trial, on retrial the state may only seek a life sentence. The state may not allege aggravating circumstances which were not asserted originally.

Nonetheless, if the state originally asserted more than one aggravating circumstance and less than all of those asserted were rejected by the jury, the fifth amendment has been construed to allow the assertion of different aggravating circumstances on retrial. *Poland v. Arizona*, 476 U.S. at 156–57, 106 S.Ct. at 1755–56. Why? The high court has reasoned that finding or rejecting aggravating circumstances does not constitute convicting or acquitting. While that distinction certainly delineates between the case in which all aggravating circumstances are rejected at the first trial and the one in which only some are rejected, it does not distinguish between the case in which the sole aggravating circumstance is rejected and the case in which one of two circumstances is rejected. In that context, it is, respectfully, a distinction without a difference. Nonetheless, we are bound by the Supreme Court's interpretation of federal constitutional provisions. *Miller v. State*, 584 S.W.2d 758, 760 (Tenn.1979).

---

1. On those rare occasions in which defendant was convicted of a violent felony after the original sentencing hearing but prior to resentencing, I would hold that the state could assert prior violent felony conviction(s) as a new aggravating circumstance under Tennessee Code Annotated Section 39–13–204(i)(2).

## II.

We are not, however, so restricted in viewing our own Constitution. We, as the Supreme Court of Tennessee, have the full and final power to interpret our state constitution. *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). Tennessee, and every state, has the "sovereign right to adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitution." *Prune Yard Shopping Center v. Robins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980); *Miller v. State*, 584 S.W.2d at 760. "It is elementary that States are free to provide greater protections ... than the Federal Constitution requires." *California v. Ramos*, 463 U.S. 992, 1013–14, 103 S.Ct. 3446, 3460, 77 L.Ed.2d 1171 (1983).

The sovereignty of the individual states and the institutional constraints of the United States Supreme Court oblige each state to define those distinctive and independent fundamental rights found within its own constitution. The function of the United States Supreme Court is to define the limits of what states can do, not to dictate what a state should do. *State v. Ramseur*, 106 N.J. 123, 524 A.2d 188, 195–95 (1987) (J. O'Hern, concurring). As has been noted: "The real question for [state supreme courts] is not what the State *can do*, but rather what [the state] should do in the just exercise of [the] common law supervisory power over criminal practice within [the] jurisdiction." *Id.* at 295.

In interpreting our state constitution, we have frequently acknowledged its authority to provide protections beyond that of the comparable federal constitutional guarantees. *State v. Black*, 815 S.W.2d 166, 189 (Tenn. 1991). We have not shunned our obligation to recognize independent protections afforded under our state constitution. *See e.g. State v. Jacumin*, 778 S.W.2d 430 (Tenn. 1989) (test for sufficiency of search warrant affidavits); *Miller v. State*, 584 S.W.2d 758 (Tenn.1979) (five step ex post facto analysis). *See also State v. Harris*, 839 S.W.2d 54 (Tenn.1992) (self-incrimination); *State v. Black*, 815 S.W.2d 166 (Tenn.1991) (Eighth Amendment issues); *Doe v. Norris*, 751 S.W.2d 834 (Tenn.1988) (due process).

In concluding that our Constitution disallows the state's reliance upon new aggravating circumstances in capital resentencing hearings, we do not conclude that the use violates double jeopardy under the Tennessee Constitution. Rather, we focus on the "law of the land" clause[2] of our state Constitution which, while similar to the due process provisions of the United States Constitution, has a "quality independent of the United States Constitution...." *Sneed v. State*, 872 S.W.2d 930, 934 (Tenn.Crim.App.1993). *See State v. Middlebrooks*, 840 S.W.2d 317 (Tenn. 1992); *State v. Jacumin*, 778 S.W.2d 430 (Tenn.1989).

Our "law of the land" clause recognizes that fundamental fairness and substantial justice are components of due process.[3] *See Van Zandt v. State*, 218 Tenn. 187, 402 S.W.2d 130, 135 (1966); *Vaughn v. State*, 3 Tenn.Cr.App. 54, 456 S.W.2d 879, 883, *cert. denied*, (Tenn.1970). The bedrock principle in our law is that "fundamental fairness [is] essential to the very concept of justice." *Scott v. State*, 216 Tenn. 375, 392 S.W.2d 681, 685 (1965). We have applied the concept of fundamental fairness throughout the years to issues as diverse as the identity of a confidential informant,[4] the fairness of administrative proceedings,[5] the statute of limitations in products liability actions,[6] the use of

---

2. The clause, found in Article 1, Section 8, provides: "No man to be disturbed but by law. That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Tenn. Const. Art. 1, § 8.

3. In *Van Zandt*, this Court, while considering the admissibility of a confession, stated: "The true test, it seems to us, is whether 'fundamental fairness' and 'substantial justice' which after all, are what is meant by 'due process of law' ... are absent or present." *Van Zandt v. State*, 402 S.W.2d at 135.

4. *Goines v. State*, 572 S.W.2d 644 (Tenn.1978).

5. *McMinnville Freight Line, Inc. v. Atkins*, 514 S.W.2d 725 (Tenn.1974).

6. *McCroskey v. Bryant Air Conditioning Co., et al.*, 524 S.W.2d 487 (Tenn.1975).

non-attorney judges in juvenile proceedings,[7] and the evidence of uncharged crime admitted in death penalty sentencing.[8] Nowhere is the principle more crucial than in issues relating to capital sentencings.

> [T]he penalty of death is different in kind from any other punishment imposed under our system of criminal justice. Because of the uniqueness of the death penalty, [it cannot] be imposed under sentencing procedures that create[ ] a substantial risk that it would be inflicted in an arbitrary and capricious manner.

*Gregg v. Georgia*, 428 U.S. 153, 158, 96 S.Ct. 2909, 2918, 49 L.Ed.2d 859 (1976).

Because death is different from all other penalties and because it is severe beyond rectification, capital sentencing procedures must satisfy the imperatives of due process. *Gardner v. Florida*, 430 U.S. 349, 358–59, 97 S.Ct. 1197, 1204–05, 51 L.Ed.2d 393 (1977). The qualitative difference of death from all other punishments requires procedures that withstand "a correspondingly greater degree of scrutiny." *California v. Ramos*, 463 U.S. 992, 998–99, 103 S.Ct. 3446, 3452, 77 L.Ed.2d 1171 (1983). *See also Gardner v. Florida*, 430 U.S. at 358, 97 S.Ct. at 1204–05; *State v. Terry*, 813 S.W.2d 420 (Tenn.1991). Thus, we consider the use of aggravating circumstances at resentencing with a heightened regard for the imperatives of fundamental fairness and substantial justice as required by Tennessee's Constitution.

### III.

While we have never addressed directly the issue presented by these two cases, our decision in *State v. Branam*, 855 S.W.2d 563 (Tenn.1993), is instructive. In *Branam*, de-fendant, as appellants here, was convicted of felony murder committed during the perpetration of a robbery. *State v. Branam*, 855 S.W.2d at 565. At sentencing, the jury found that the state had proven two aggravating circumstances: murder in the commission of another felony and murder committed to avoid, interfere with, or prevent lawful arrest or prosecution. *Id.* at 569. On appeal, this Court affirmed the conviction but found that "there was not a shred of evidence" to prove that the murder was committed to avoid, interfere with, or prevent the lawful arrest or prosecution of defendant or another. *Id.* at 570.

After holding that the evidence was insufficient to prove the first aggravating circumstance, the Court addressed the remaining aggravating circumstance and the remedy:

> In the past, when this Court has set aside one of a number of aggravating circumstances as improperly submitted, we have generally held that the case must be remanded for a new hearing on punishment. T.C.A. § 39–13–204(k) (1991) (citations omitted). In this case, however, the only remaining aggravating circumstance—murder committed in the course of another felony—cannot be considered upon remand, under the rule recently announced by the Court in *State v. Middlebrooks*, 840 S.W.2d 317, 319 (Tenn.1992). *It follows that under state law, the defendant cannot be sentenced to death and his sentence must be set at life imprisonment.*

*Id.* (emphasis added).

The state argues that the Court modified the sentence in *Branam* because it found the death penalty to be disproportionate.[9] While

---

7. *State v. Williams*, 547 S.W.2d 895 (Tenn.1976).

8. *State v. Bobo*, 727 S.W.2d 945 (Tenn.1987).

9. Although not raised as an issue in this appeal, under the authority of *Branam*, Harris' sentence of death may be disproportionate. Our decision in *Branam* reiterated the holding of *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). There, the United States Supreme Court held that imposition of the death penalty against one "solely for participation in a robbery in which another robber takes life," without proof that defendant attempted or intended to kill, or intended the use of deadly force, violates the Eighth Amendment. This constitutional standard was refined in *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 in which the Court allowed the imposition of the death penalty against a defendant who was a major participant in a felony that resulted in murder. There, the Court concluded that death was not a disproportionate punishment despite the absence of an intent to kill so long as defendant's mental state is shown to be at least one of reckless indifference.

As Justice Drowota noted in *Branam*, this Court has upheld a death sentence on only one non-trigger person case. 855 S.W.2d at 573;

perhaps *a* reason for the modification, disproportionality was clearly not the *sole* reason. After considering federal requirements, the Court concluded that "the same result is required by federal law" and that the death sentence, "under these facts would, in our judgment, constitute a violation of the Eighth Amendment's guarantee against cruel and unusual punishment." *Id.* at 570–71. Accordingly, the Court held:

> Based on our conclusion that capital punishment is precluded in this case *by both the state and the federal constitutions,* we reverse the penalty portion of the trial court's judgment and order that, upon remand the defendant be resentenced in accordance with this opinion.

*Id.* at 571 (emphasis added).

The result in *Branam* would have been the same even had the death penalty been proportionate under federal constitutional law. State law required that the death sentence be modified to a sentence of life imprisonment in light of the conclusion that both aggravating circumstances were nullified. The state would not be given a second chance to prove that aggravating circumstances existed.[10]

Furthermore, our death penalty procedure is explicit, unambiguous, and mandatory. Rule 12.3(b) of the Tennessee Rules of Criminal Procedure requires that the state by written notice filed not less than thirty (30) days before trial:

> *shall* specify that the State intends to seek the death penalty and the notice *shall* specify those aggravating circumstances the State intends to rely upon at a sentencing hearing.

Tenn.R.Crim.P. 12.3(b) (emphasis added). After a capital jury finds guilt beyond a reasonable doubt, they must determine whether the state has proved any of the specified aggravating circumstances beyond a reasonable doubt. If so, the jury must determine whether the circumstances which were proved outweigh any mitigating circumstances beyond a reasonable doubt. Tenn. Code Ann. § 39–13–204(f) (1991 Repl.). Their verdict represents an acceptance or rejection of facts *and* a weighing of all circumstances presented. Implicit in the procedure is a recognition that the jury will be given all the relevant evidence essential to the determination of life or death.

Thus, established precedent and procedure guide the consideration of what fundamental fairness requires in these circumstances. The requirements of due process, by definition, vary with the nature and importance of the interests involved. The state's interest in imposing the ultimate penalty is significant. Its interest in mustering only a partial list of aggravating circumstances for which to seek that penalty is nonexistent. Conversely, the accused, society, and the system have an important interest in assuring that procedures in capital cases are fair and consistent. Anything less leads to a disrespect for the integrity of the system. Since due process requirements are heightened in capital cases and since the state has no interest in withholding notice of aggravators, fundamental fairness dictates that the state be limited in any capital sentencing to the aggravating circumstances claimed before the first trial.

That was the decision reached by the Court of Criminal Appeals in these cases. Upon striking the sole aggravating circumstance originally relied upon, none remained to justify the imposition of the death penalty. Therefore, based on *Branam* and Tennessee Code Annotated Section 39–13–206(d)(2), the Court of Criminal Appeals modified appel-

---

*State v. Taylor,* 774 S.W.2d 163 (Tenn.1989). A comparison of the facts of that case with those here suggests death might be a disproportionate penalty in the case at bar.

**10.** It is true that prior to *Branam,* this Court either remanded for a new hearing or applied a harmless error analysis in every case which *Middlebrooks* affected. However, in all those cases, the original jury found at least one aggravating circumstance other than the felony murder aggravator. In those cases with additional aggra-

vating circumstances, the Court either remanded for the jury to weigh the *remaining* aggravating factors against any mitigating factors and to determine whether the death penalty was still an appropriate punishment, *see e.g. State v. Bane,* 853 S.W.2d 483, 490 (Tenn.1993), or conducted a harmless error analysis. *See e.g. State v. Howell,* 868 S.W.2d 238 (Tenn.1993). These cases do not endorse the use of new aggravating circumstances at a second sentencing.

lants' sentences to life imprisonment. *See State v. Timothy D. Harris*, No. 02C01–9211–CR–00259, 1994 WL 123647 (Tenn. Crim.App., Jackson, April 13, 1994); *State v. Craig D. Thompson*, No. 02C01–9208–CR–00195, 1994 WL 85880 (Tenn.Crim.App., Jackson, Mar. 9, 1994).

The state challenged these sentence modifications in petitions to rehear. While the intermediate appellate court held that the state had waived the issue in *Thompson*, the court nonetheless concluded that the state was not entitled "to another chance at the death penalty on the basis of aggravating factors it had withheld in the initial proceeding." *State v. Craig D. Thompson*, *supra*, slip op. at 3. Sound judicial policy, the panel explained, required the court

> to guard against piecemeal litigation in the sentencing phase of capital cases. The prosecution should not "hold back" but should, instead, apprise the jury of all possible aggravating factors at the first opportunity. Judicial economy demands adherence to this policy.

*State v. Craig D. Thompson*, *supra*, slip op. at 6. *See also Timothy Harris*, Order Denying Petition to Rehear, *supra*, slip op. at 7.

Implicit in all of these holdings is the recognition that allowing the state to submit new aggravating circumstances at resentencing in death penalty cases offends notions of fundamental fairness and undermines sound judicial policy. Fundamental fairness is obviated when the state is placed in a better position after a successful defense appeal. Precepts of justice are sacrificed when the system encourages the state, whose duty is to act fairly and indiscriminately, to withhold evidence. Fairness and justice, as well as efficiency and economy, require the state to advance all aggravating circumstances upon which it intends to rely in the original death penalty trial. *See State v. Carter*, 890 S.W.2d 449 (Tenn.Crim.App.1994). Principles of fundamental fairness are inconsistent with allowing the state repeated, supplemented attempts to get a death sentence. The

trauma of such an ordeal is, at least, the equivalent of that experienced by a noncapital defendant on retrial in which no additional charges can be made. *See* Tenn.R.Crim.P. 8. If we are true to our commitment to recognize the uniqueness of the penalty of death, we must protect the capital defendant at resentencing at least to the same extent we do the noncapital defendant on retrial.

Death is different. We must employ procedures that assure that the parties mete out the life-death controversy on a level playing field. The time and expense—financially and emotionally—of a death penalty sentencing hearing demands that the state with all its resources, investigate, develop, and organize its proof before the initial trial. Having failed to accomplish a legally supported death sentence on the circumstances relied upon, we cannot allow the state to try again with formerly non-claimed circumstances. To do so would encourage less than devoted preparation by prosecutors. We do not imply that the state, as a general practice, would hold back evidence of aggravating circumstances in case a death sentence were set aside on appeal. As the assistant attorney general noted at oral argument, the state has little reason not to assert all known aggravating circumstances in a capital proceeding. Therefore, a rule requiring that the state give notice of all known aggravating circumstances prior to the original trial does not unduly prejudice the state or obstruct the state's effort to seek the death penalty in appropriate cases.[11]

### IV. Conclusion

Accordingly, I would hold as follows:

1. If the jury rejects an aggravating circumstance or an appellate court finds it is unsupported by the evidence, the state may not rely on that circumstance at resentencing.

2. At resentencing or in sentencing after a retrial, the state can rely only upon those aggravating circumstances relied upon by the state and found to exist by

---

**11.** Our conclusion is equally consistent with Rule 8 of the Tennessee Rules of Criminal Procedure. That Rule provides that offenses that "are based upon the same conduct or arise from the same episode" if the offenses "are known to the appropriate prosecuting official" at the time the defendant is charged.

the original sentencing jury that were not otherwise eliminated on appeal. However, the aggravating circumstance in Section 39–13–204(i)(2) may be asserted at resentencing as a new aggravating circumstance on those rare occasions in which a new felony conviction for a violent crime has been entered against defendant after the original sentencing but prior to the second.

3. If the jury finds one or more aggravating circumstances, and on appeal all circumstances are eliminated, the case must be remanded to the trial court to determine whether the sentence should be life imprisonment or life without parole.

4. In case of mistrial, the state may not allege any aggravating circumstance not included in its original notice to defendant unless a new felony conviction for a violent crime has been entered against defendant after the date of the mistrial but prior to the commencement of the second trial.

I would, therefore, affirm the judgments of the Court of Criminal Appeals and remand the cases for the imposition of life sentences.

REID, J., concurs.