IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 8, 2019 Session

## STATE OF TENNESSEE v. ANTONIO HENDERSON

**Appeal from the Criminal Court for Shelby County**
**No. 12-05649            Paula L. Skahan, Judge**

————————————————————

### No. W2018-00669-CCA-R3-CD

————————————————————

The Defendant, Antonio Henderson, was convicted of especially aggravated robbery, attempted second degree murder, two counts of attempted aggravated robbery, aggravated assault, and employing a firearm during the commission of or attempt to commit a dangerous felony. The trial court imposed partial consecutive sentences for an effective sentence of forty-one years. This court previously affirmed the Defendant's convictions but remanded the case to the trial court because the trial court failed to make findings specifying the basis upon which it relied in imposing partial consecutive sentences. On remand, the trial court issued an order articulating its reasoning for imposing consecutive sentences. The Defendant now appeals, arguing that the trial court erred in failing to grant him a new evidentiary hearing and in imposing consecutive sentences. Upon review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Stephen Bush, Chief Public Defender, Barry W. Kuhn (on appeal) and Jennifer H. Case (at trial), Assistant Public Defenders, for the Appellant, Antonio Henderson.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pamela Stark, Austin Schofield, and Leslie Byrd, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

## FACTS AND PROCEDURAL HISTORY

This appeal arises from this court's prior decision remanding the case back to the trial court for "reconsideration of the requisite factors for imposing consecutive sentences" as it related to the Defendant. *State v. Antonio Henderson and Marvin Dickerson*, No. W2015-00151-CCA-R3-CD, 2016 WL 3390627, at *22 (Tenn. Crim. App. Oct. 24, 2016). The Tennessee Supreme Court granted the Defendant's application for permission to appeal to address the sufficiency of the evidence of his conviction for especially aggravated robbery. *State v. Henderson*, 531 S.W.3d 687, 691 (Tenn. 2017). The court concluded that the evidence was sufficient to support the especially aggravated robbery conviction and "remanded to the trial court for further proceedings consistent with the Court of Criminal Appeals' opinion regarding the Defendant's consecutive sentencing." *Id.* at 698.

On the night of the incident leading to the shooting, Ms. Tiffany Fleming and Mr. Shabaka Reed were at Mr. Nathan Cannon's house playing dominos. Two of Mr. Cannon's guests, Ms. Fleming and Mr. Reed left Mr. Cannon's house to go buy beer. When they returned, they parked in the back of a parking lot so they could have some privacy. They subsequently saw Mr. Cannon running toward the car while being chased by two men, the Defendant and his co-defendant, with a gun.

The Defendant and his co-defendant told Mr. Reed to get out of the car. The Defendant and his co-defendant then ordered Mr. Reed to give them his cell phone, his keys, and his wallet, and Mr. Reed complied. Mr. Reed testified that he heard the Defendant and his co-defendant asking Mr. Cannon, "Where's the money?" and "Where's the dope?" He also heard the Defendant and his co-defendant discussing putting Mr. Reed in the trunk. It was at that point Mr. Reed decided that he was going to resist. Mr. Reed grabbed the gun that one of the men was holding, and a struggle ensued. In the course of the struggle, Mr. Reed was shot four times. He was hospitalized for two weeks following the shooting and had to wear a colostomy bag for five months as a result of his injuries. While the men were struggling over the gun, Ms. Fleming ran on foot into the nearby woods where she hid until the police arrived.

Ms. Kimberly Spright also testified at the trial. On the night of the shooting, she let her neighbor, Ms. Angela Boles, borrow her car. Ms. Boles drove the Defendant, his co-defendant, and Ms. Spright to an area near the crime scene. A short time after the Defendant and his co-defendant exited the car, Ms. Spright heard gunshots. When the Defendant and his co-defendant returned to the car, Ms. Spright noticed that the co-

defendant's finger "was bleeding and hanging off." She heard the Defendant say, "I made a mistake and shot [the co-defendant]." Ms. Boles drove to an apartment complex where she dropped off the Defendant. She then drove the co-defendant to the hospital.

During Ms. Fleming's testimony, she revealed that she was close friends with the Defendant's mother and had known the Defendant since he was a child. She testified that she visited the Defendant's mother on the day after the incident and told her what had happened. Ms. Fleming saw the Defendant and the co-defendant while she was at the home. After the Defendant was arrested, he called his mother's house. Ms. Fleming was present at the Defendant's mother's house, and the Defendant spoke to her. A recording of the telephone call was played during the trial. The Defendant apologized to Ms. Fleming and told her he did not know she was there. The Defendant never directly admitted to being involved in the shooting.

The Defendant was found guilty of one count of especially aggravated robbery and one count of attempted second degree murder as to Mr. Reed; one count of attempted aggravated robbery as to Mr. Cannon; one count of attempted aggravated robbery and one count of aggravated assault as to Ms. Fleming; and one count of employing a firearm during the commission of a dangerous felony.

The trial court conducted a joint sentencing hearing of the Defendant and his co-defendant. The Defendant presented the following evidence at the sentencing hearing: eleven letters from the Defendant's friends and family members in which they discussed the Defendant's character and requested leniency for the Defendant, a certificate of completion of a domestic violence program, a moral recognition checklist showing that the Defendant had completed all the steps in the program, and an allocution in which the Defendant apologized to the victims as well as to members of his family.

The trial court applied two enhancement factors. First, the trial court found that "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." T.C.A. § 40-35-114(1). The trial court found that the Defendant's juvenile history established adequate grounds for enhancing his sentence. Specifically, the trial court noted that the Defendant's juvenile history included a conviction for aggravated burglary, theft of property over $500, and possession with intent to sell marijuana. The trial court also noted that the Defendant "possessed or employed a firearm" during the commission of the attempted second degree murder. T.C.A. 40-35-114(9).

The trial court found that the Defendant's completion of courses while incarcerated was a mitigating factor. The trial court found that the Defendant was not remorseful and did not apply this as a mitigation factor. The trial court noted that the

Defendant's mother and sister "r[a]n around getting witnesses and victims in the case to not show up." His sister was taken into custody during the trial for contacting a key witness. Trial counsel argued that there was no evidence that the Defendant influenced his family's actions.

The trial court sentenced the Defendant to twenty-four years for the especially aggravated robbery of Mr. Reed; ten years for the attempted second-degree murder of Mr. Reed; four years for the aggravated robbery of Mr. Cannon; four years for the aggravated robbery of Ms. Fleming; four years for the aggravated assault of Ms. Fleming; and seven years for employing a firearm during the attempt to commit second-degree murder. The conviction for the aggravated assault of Ms. Fleming merged into the conviction for the aggravated robbery of Ms. Fleming.

The trial court ordered that the sentences for especially aggravated robbery, attempted second degree murder, and the firearm offense run consecutively to each other and concurrently with the remaining counts, for an effective sentence of forty-one years. The trial court noted that consecutive sentences for the attempted second degree murder and the firearm conviction was mandatory. *See* T.C.A. § 39-17-1324(e)(1) (requiring that a sentence for unlawful employment of a firearm during the commission or attempt to commit a dangerous felony be served consecutive to a sentence for the underlying dangerous felony).

On direct appeal, the Defendant argued that the trial court erred in imposing partially consecutive sentences. *Antonio Henderson*, 2016 WL 3390627, at *20. This court concluded that the trial court failed to state the basis upon which it ordered the Defendant to serve his sentence for especially aggravated robbery consecutively to his sentences for attempted second degree murder and the firearm offense. *Id.* at *21. This court noted that even if it was to assume that the imposition of partial consecutive sentences was based upon the dangerous offender category in Tennessee Code Annotated section 40-35-115(b)(4), the trial court failed to make the additional findings as required by *State v. Wilkerson*, 905 S.W.2d 922 (Tenn. 1995). *Id.* This court stated that when the trial court fails to state on the record any reason for imposing a sentence, "the more appropriate action is to remand the case to the trial court for reconsideration." *Id.* at *22. Thus, this court reversed the trial court's order requiring that the Defendant's sentence for especially aggravated robbery be served consecutively to his sentences for attempted second degree murder and the firearm offense and remanded the case "for reconsideration of the requisite factors for imposing consecutive sentences." *Id.*

On remand, the Defendant filed a motion and memorandum of law, arguing that the trial court should allow his sentences to run concurrently and requesting an evidentiary hearing. The Defendant sought to introduce recent statistics from the

- 4 -

Administrative Office of the Courts and an additional allocution. The State filed a response arguing that the remand did not require the trial court to provide a new sentencing hearing or to allow the Defendant to submit additional proof. The trial court denied the Defendant's request for an evidentiary hearing and imposed consecutive sentencing. The trial court found that the scope of the remand was only to "supply the factors involved in the decision to impose consecutive sentences." However, the trial court allowed the Defendant to enter the allocution and statistics into the record for the purposes of appeal.

The Defendant's second allocution stated that he was taking active steps to improve his life while incarcerated. He had taken courses to obtain his GED and any other classes that were available. He expressed remorse for his actions on the night of the shooting. He maintained he had "changed and I'm going to be a better man and a better father."

The Defendant argued that the updated statistics showed a disparity between his sentence and sentences imposed in similar cases in the year in which he was originally sentenced. The State argued that it would be inappropriate for the trial court to rely on the updated statistics because they were not available at the time the Defendant was originally sentenced.

The trial court proceeded to make findings of fact identifying and considering the factors for imposing consecutive sentences. The trial court found that the Defendant "is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime when the risk to human life is high." T.C.A. § 40-35-115(4). The trial court found that the circumstances surrounding the commission of the offense were aggravated, that confinement for an extended period of time was necessary to protect society from the Defendant's unwillingness to lead a productive life and the Defendant's resort to criminal activity in furtherance of an anti-societal lifestyle, and that the aggregate length of the sentences reasonably related to the offenses for which the Defendant was convicted. In reaching this conclusion, the trial court noted that the Defendant was the shooter in this case, that he shot one of the victims four times, and that any mitigating factors that were presented are "called into question by the Defendant's documented attempt to influence witness testimony at trial." The Defendant now appeals the trial court's decision.

## ANALYSIS

### I. Sentencing Hearing on Remand

The Defendant maintains that the trial court erred in denying him a new sentencing hearing. The State responds that the trial court was not required to hold a new sentencing hearing. We agree with the State.

Pursuant to Tennessee Code Annotated section 40-35-401, appellate courts have the following options when reviewing sentencing issues on appeal:

(1) Dismiss the appeal;
(2) Affirm, reduce, vacate or set aside the sentence imposed;
(3) Remand the case or direct the entry of an appropriate sentence or order; or
(4) Direct any further proceedings appropriate or required under the circumstances.

T.C.A. § 40-35-401(c). On direct appeal, this court "remanded for reconsideration of the requisite factors for imposing consecutive sentences." *Antonio Henderson*, 2016 WL 3390627, at *22. Our supreme court affirmed this court's decision on consecutive sentencing and "remanded to the trial court for further proceedings consistent with the Court of Criminal Appeals' opinion regarding the Defendant's consecutive sentencing." *Henderson*, 531 S.W.3d at 698.

Appellate courts direct actions through their orders, judgments, and mandates and may limit the scope of a remand. *State v. Williams*, 52 S.W.3d 109, 123 (Tenn. 2001); *see State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995). Such mandates are controlling, and the trial court does not have "the authority to expand the directive or purpose of [the higher court] imposed upon remand." *State v. Weston*, 60 S.W.3d 57, 59 (Tenn. 2001). Otherwise, "'[t]here would be no finality or stability in the law and the court system would be chaotic in its operation and unstable and inconsistent in its decision.'" *Irick*, 906 S.W.2d at 443 (quoting *Barger v. Brock*, 535 S.W.2d 337, 341 (Tenn. 1976)).

In *State v. Williams*, this court concluded that the trial court erred in conducting an additional hearing and imposing a sentence of split confinement on remand rather than ordering the defendant to serve his sentence on probation as required by this court's judgment and mandate in a prior appeal. 52 S.W.3d at 120-21. The judgment stated, "This case is remanded to the trial court for entry of an order reflecting that the sentence be served on probation, with the terms and conditions of probation to be set by the trial court." *Id.* at 120. The mandate provided that the case "be remanded thereto for further

- 6 -

proceedings and final determination" and ordered the trial court to "proceed with the execution of this Judgment of our said Court of Criminal Appeals, by such further proceedings in your Court as shall effectuate the objects of this order to remand, and attain the ends of justice." *Id.*

This court concluded that the remand was limited rather than general and that "the mandate did not contemplate further proceedings, and it did not direct the trial court to undertake additional fact finding or conduct evidentiary hearings." *Id.* at 124. This court further stated that the task to be completed by the trial court on remand pursuant to the mandate was "ministerial" in that the trial court was required to enter an amended judgment sentencing the defendant to full probation and setting forth the terms and conditions of probation. *Id.* As a result, the trial court was not at liberty to reopen the defendant's sentencing without making a threshold determination that sufficient cause existed to conduct additional hearings. *Id.*

Like the judgment and mandate in *Williams*, the judgment and mandate in the present case was limited. The judgment and mandate did not contemplate further proceedings and did not direct the trial court to conduct additional evidentiary hearings. Rather, the trial court was ordered to state the basis upon which it imposed partial consecutive sentences.

The Defendant relies on *State v. Davis*, 825 S.W.2d 109 (Tenn. 1991), and *State v. Harris*, 919 S.W.2d 323 (Tenn. 1996), as support for his argument that he was entitled to a new sentencing hearing on remand. However, both of these cases are distinguishable from the Defendant's case because both cases involved a reversal of the defendants' sentences and a remand for new sentencing hearings. *See Harris*, 919 S.W.2d at 325, 330; *Davis*, 825 S.W.2d at 110-11. This court recognized in *Davis* that a new sentencing hearing on remand is not a continuation of the first sentencing proceeding. 825 S.W.2d at 111. Unlike *Davis* and *Harris*, the judgment and mandate from the original appeal in this case was limited and did not order a new sentencing hearing. Upon our review of the record, we conclude that that there was ample support in the record to support the trial court's imposition of a sentence without conducting a new sentencing hearing. As a result, the trial court did not err in declining to conduct an additional evidentiary hearing before entering a sentencing order.

## II. Imposition of Partial Consecutive Sentences.

The Defendant also argues that the trial court erred in imposing consecutive sentences. He acknowledges that the trial court's basis for ordering consecutive sentences is "an allowable basis for consecutive sentencing" but argues that the trial court should have considered new evidence he attached to his motion for a new hearing. The

State responds that the trial court was not required to consider the new evidence. Further, the State maintains that the trial court committed no error and abided by this court's mandate in its sentencing order.

The trial court has the sound discretion of determining whether a sentence should be served concurrently or consecutively. *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). A trial court's decision to impose consecutive sentencing is reviewed under an abuse of discretion standard with a presumption of reasonableness. *Id.* A trial court must specify its reasoning when imposing a consecutive sentence. Tenn. R. Crim. P. 32(c)(1). Consecutive sentencing is appropriate when the trial court provides reasons on the record that establish one of the seven factors enumerated in Tennessee Code Annotated section 40-35-115(b). *Pollard*, 432 S.W.3d at 860. Here, the trial court found that the Defendant "is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime when the risk to human life is high." T.C.A. 40-35-115(b)(4).

When a trial court imposes consecutive sentencing based upon the dangerous offender category, the trial court must make additional findings that "an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). The trial court made these additional findings and stated facts to support such findings.

The Defendant argues that the trial court erred in failing to consider the updated statistical information provided by the Administrative Office of the Courts as required by Tennessee Code Annotated section 40-35-210(b)(6) and his new allocution. However, as we have held, the judgment and mandate was limited and did not provide for the consideration of additional evidence. Regardless, the Defendant has failed to demonstrate that the trial court abused its discretion in imposing partial consecutive sentences.

The trial court followed the sentencing guidelines and articulated findings of fact that support its decision to impose consecutive sentences. Specifically, the trial court found that "the circumstances surrounding the commission of the offense are aggravated." The court noted that the Defendant was the shooter and that he shot Mr. Reed four times. The trial court also found that "confinement for an extended period of time is necessary to protect society from the defendant's unwillingness to lead a productive life and the defendant's resort to criminal activity in furtherance of an anti-societal lifestyle." Finally, the trial court determined that "the aggregate length of the sentences reasonably relates to the offense [of which] the defendant stands convicted."

Accordingly, we conclude that the trial court followed this court's mandate and committed no error in imposing consecutive sentences.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgments of the trial court.

_____

JOHN EVERETT WILLIAMS, PRESIDING JUDGE