IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 7, 2023 Session

**ABIGAIL LYNN SEVIGNY v. WARREN MAXWELL SEVIGNY**

**Appeal from the Circuit Court for Davidson County**
**No. 19D-1971      Phillip R. Robinson, Judge**

_____

**No. M2022-00953-COA-R3-CV**
_____

In this post-divorce dispute, the wife filed a petition for criminal contempt.  After testimony was heard, the parties announced in broad terms that they had reached a settlement. Thereafter, the parties could not agree on the terms of the settlement.  At a hearing on the husband's motion requesting approval of his proposed order, the court dismissed the petition on grounds of double jeopardy.  We have determined that the trial court erred in dismissing the case and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Sean Ross Aiello, Franklin, Tennessee, for the appellant, Abigail Lynn Sevigny.

Helen Sfikas Rogers and Stella Kamm Mallinak, Nashville, Tennessee, for the appellee, Warren Maxwell Sevigny.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Abigail Sevigny ("Wife") and Warren Sevigny ("Husband") were married in September 2014 and divorced pursuant to a final decree entered on January 6, 2021.  The parties had one minor child, a son born in March 2016.  The parties' marital dissolution agreement ("MDA"), which was incorporated into the final decree, includes the following pertinent provisions regarding a 529 account[1] set up for the minor child:

_____

[1] A 529 account is a tax-advantaged savings account to be used for education costs.

> The funds in the 529 account shall only be used for the education of the child. Husband shall continue to be the custodian of the 529 account for the child. Husband shall provide statements to Wife on the accounts at the end of each quarter. If there are any funds remaining after the child turns 25 years of age, the parties shall equally divide the remaining funds.

The permanent parenting plan, which was incorporated into the court's final decree, established Wife as the primary residential parent and initially gave Husband 26 days a year of parenting time with the child with a staged process for allowing Husband increasing amounts of parenting time. The parenting plan gave Wife the authority to make major decisions regarding the child's education.

In July 2021, and again in October 2021, Wife filed a motion to compel Husband to apply funds in the 529 account to their child's private kindergarten tuition payments and to provide her with account statements.[2] After a hearing on Wife's motion to compel, the court entered an order on December 7, 2021, stating that the court viewed the motion to compel as a request for compliance with a prior court order. The court took the motion under advisement and reserved ruling. In its order, the court noted that Wife could pursue criminal contempt proceedings to seek enforcement of the provisions of the MDA.

In March 2022, Wife filed a petition for criminal contempt setting forth nine (9) counts. Counts 1 and 2 concerned Husband's alleged failure to provide quarterly 529 statements to Wife; counts 3, 4, and 5 concerned Husband's failure to apply 529 funds to the minor child's private school tuition; and count 9 asserted a violation by Husband of Wife's educational decision-making authority. Wife voluntarily dismissed counts 6, 7, and 8 (concerning notice of travel).

The remaining counts of Wife's petition for criminal contempt were heard on April 14, 2022, and both parties were represented by counsel. For purposes of this appeal, it is necessary to review the sequence of events at the hearing. At the beginning of the hearing, the court questioned Husband in accordance with Tenn. R. Crim. P. 42(b) to ensure that he understood the criminal contempt process, had received adequate notice, and was aware of his constitutional rights. Both parties made an opening statement, and Husband made an oral motion to dismiss the petition based upon a lack of willfulness. The court characterized the relevant provisions of the MDA as vague on the issue of the proper educational uses of the 529 funds and, on that basis, granted Husband's motion to dismiss regarding counts 3, 4, and 5.

---

[2] In June 2021, Wife filed a petition for modification of the permanent parenting plan. This petition was dismissed by the court in April 2022 pursuant to Wife's notice of voluntary dismissal.

The case proceeded to a hearing on the remaining counts (1, 2, and 9), and the court heard Wife's testimony. Husband then renewed his motion to dismiss counts 1 and 2.[3] After some discussion between the attorneys and the court, Husband's counsel announced her intention to call one witness, her paralegal. Wife objected because the paralegal had been sitting in the courtroom for the entire hearing, and the court declined to hear testimony from the paralegal. At this point, the court suggested that the parties step outside the courtroom and attempt to reach an agreement. The court specifically mentioned the need for clarity on the 529 provision in the MDA. Prior to a recess, Husband confirmed that he did not intend to call any other witnesses.

Following the recess, the parties announced that they had reached a settlement agreement. Wife's counsel stated: "We're non-suiting with prejudice the pending charges for criminal contempt, and I believe the agreement we're going to announce is going to resolve the under advisement issue as well." Husband's counsel described the parties' agreement as follows: "And father is going to agree to pay 52 percent of tuition for private school, K through 12, and he will reimburse at that percentage tuition for last year." The court stated its understanding of the agreement: "[S]o as I understand it, y'all are taking a nonsuit. And I'm assuming everybody is paying their attorneys' fees and then y'all have worked out a plan in regards to the use of the 529?" Both attorneys agreed to the court's statement. The parties did not provide the court with any other details regarding an agreement on the use of the 529 funds. The court asked Husband and Wife separately to confirm their understanding and approval of the agreement announced by their attorneys, and Husband and Wife both agreed.

The parties were thereafter unable to agree on the terms of an order memorializing their agreement. On May 24, 2022, Husband filed a motion requesting court approval of his proposed order. The parties agreed on a provision for Wife's voluntary dismissal of all contempt charges and a provision making both parties responsible for the child's K-12 tuition, with Husband paying 52% and Wife paying 48%. Wife's proposed order also amended the terms of the MDA to specify that the 529 funds would be applied to the child's "college education." Husband's proposed order did not call for modification of the terms of the MDA.

On June 10, 2022, the court held a hearing on Husband's motion for court approval of his proposed order. In an order entered on July 8, 2022, the court denied Husband's motion for court approval of his proposed order. The court further declined to issue a ruling on the pending charges of criminal contempt heard on April 14, 2022, and declared the charges dismissed based upon the court's finding that double jeopardy had attached to the pending charges. Wife filed a timely notice of appeal.

---

[3] The court did not expressly rule on Husband's motion but, by its subsequent actions and comments, implicitly denied the motion.

On appeal, we are asked to decide whether the trial court erred in dismissing Wife's petition for contempt on grounds of double jeopardy.

## STANDARD OF REVIEW

The issue of whether the double jeopardy protections of the United States Constitution or the Tennessee Constitution apply in a particular case is a question of law. *Metro. Gov't of Nashville & Davidson Cnty. v. Dreher*, No. M2020-00635-COA-R3-CV, 2021 WL 942872, at *2 (Tenn. Ct. App. Mar. 12, 2021). For questions of law, we review the trial court's decision de novo without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

## ANALYSIS

This appeal requires this Court to examine how double jeopardy principles apply in the context of the criminal contempt proceedings against Husband in this matter. We begin with an overview of the two main areas of law at play: criminal contempt and double jeopardy.

### Criminal contempt

The contempt power of Tennessee courts has, since 1831, been circumscribed by statute. *Baker v. State*, 417 S.W.3d 428, 435 (Tenn. 2013). Under Tenn. Code Ann. § 29-9-102(3), the courts' power to inflict punishments for contempt of court extends to the willful disobedience of a party to "any lawful writ, process, order, rule, decree, or command of such courts." Contempt proceedings are classified as either "civil" or "criminal," with the proper classification dependent on the "'character and purpose'" of the punishment sought. *Baker*, 417 S.W.3d at 435 (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911)). Civil contempt is remedial in nature and is designed to "force compliance with the order and thereby secure private rights established by the order." *Id.* at 436. Criminal contempt is "designed 'to preserve the power and vindicate the dignity and authority of the law and the court as an organ of society.'" *Id.* (quoting *State v. Beeler*, 387 S.W.3d 511, 520 (Tenn. 2012)). Punishments for criminal contempt, by fine or confinement, are "punitive and unconditional in nature, designed to punish past behavior." *Id.*

Contempt proceedings have been described as *sui generis*.[4] *Id.* at 435. These cases "are neither wholly civil nor criminal in nature and may partake of characteristics of both." *Id.* Criminal contempt is classified as a "crime" in some contexts "because certain

---

[4] *Sui generis* is defined to mean, "Of its own kind or class; unique or peculiar." *Sui generis*, BLACK'S LAW DICTIONARY (11th ed. 2019).

substantial rights and constitutional privileges afforded criminal defendants are also afforded criminal contemnors." *Id.* at 436. For example, a person accused of indirect criminal contempt[5] is entitled to notice and an opportunity to respond at a hearing in accordance with Tenn. R. Crim. P. 42(b). *Id.* In addition, an alleged criminal contemnor must be proven guilty beyond a reasonable doubt and is entitled to an appointed attorney. *Id.* However, "[n]ot all rights afforded criminal defendants are available to alleged criminal contemnors." *Id.* at 437. For example, an alleged criminal contemnor is generally not entitled to a jury trial, and such proceedings do not require indictment and prosecution by the State. *Id.*; *see also Wilson v. Wilson*, 984 S.W.2d 898, 900 (Tenn. 1998) (holding that "no constitutional principle nor ethical standard automatically precludes a private attorney representing the beneficiary of a court order from prosecuting a contempt action for an alleged violation of the order"). Our Supreme Court has held that post-conviction relief is "not available to challenge findings of general criminal contempt arising from civil cases." *Baker*, 417 S.W.3d at 439.

Thus, a criminal contempt proceeding, such as that on appeal, is not entirely criminal or civil in nature.

### Double jeopardy

Protections "against double jeopardy originated in antiquity" and became part of the English common law. *State v. Watkins*, 362 S.W.3d 530, 539 (Tenn. 2012). Lord William Blackstone declared as a "'universal maxim'" of English common law that "'no man is to be brought into jeopardy of his life more than once for the same offence.'" *Id.* (quoting 4 William Blackstone, COMMENTARIES *335-36). These principles were included in the United States Constitution[6] and the Tennessee Constitution.[7] *Id.* at 540-549. The Tennessee Supreme Court has interpreted the guarantees afforded by the Tennessee Constitution as "'co-extensive'" with the Double Jeopardy Clause of the Fifth Amendment (which was made applicable to the states through the Fourteenth Amendment in 1969). *Id.* at 548 (quoting *State v. Harris*, 919 S.W.2d 323, 327 (Tenn. 1996)).

The double jeopardy provisions of both constitutions protect a person against three "evils": (1) a second prosecution after an acquittal; (2) a second prosecution after a conviction; and (3) multiple punishments for the same offense. *Id.* (citing *State v. Denton*, 938 S.W.2d 373, 378 (Tenn. 1996), *abrogated on other grounds by State v. Watkins*, 362

---

[5] "Indirect criminal contempt" refers to "[c]ontemptuous acts committed outside the court's presence." *Long v. McAllister-Long*, 221 S.W.3d 1, 13 n.11 (Tenn. Ct. App. 2006).

[6] The Double Jeopardy Clause of the Fifth Amendment provides that, "No personal shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.

[7] The Tennessee Constitution provides that, "no person shall, for the same offence, be twice put in jeopardy of life or limb." TENN. CONST. art. I, § 10.

S.W.3d 530, 556 (Tenn. 2012)). The basic purpose of double jeopardy clauses has been stated as follows:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187-88 (1957) (quoted with approval in *Harris*, 919 S.W.2d at 327, and *State v. Huskey*, 66 S.W.3d 905, 914 (Tenn. Ct. App. 2001)). The protection from multiple prosecutions includes the defendant's "'right to have his trial completed before a particular tribunal.'" *State v. Nash*, 294 S.W.3d 541, 550 (Tenn. 2009) (quoting *Oregon v. Kennedy*, 456 U.S. 667, 671-72 (1982)). After jeopardy attaches, "a defendant has a valued interest in having the particular jury selected for trial render a verdict." *Huskey*, 66 S.W.3d at 914.

<u>The present case</u>

Under Tennessee law, double jeopardy provisions apply to criminal contempt proceedings. *Ahern v. Ahern*, 15 S.W.3d 73, 80 (Tenn. 2000). We understand Husband's argument in the present case to be that, once the parties announced their settlement agreement and court was adjourned, double jeopardy attached and precluded further proceedings. For the reasons discussed below, we respectfully disagree.

In a case tried without a jury, "jeopardy attaches when the first witness testifies." *Id.* Husband argues that, in the present case, the court heard testimony from Wife, and that jeopardy therefore attached. We do not disagree with this conclusion, but the fact that the defendant has been put in jeopardy[8] does not inexorably lead to the application of double jeopardy. In this present case, there is no threatened second prosecution, only a request for continuation of the same proceeding, and therefore there is no need for double jeopardy protection for Husband.

To support his position, Husband relies upon *State v. Daniels*, 531 S.W.2d 795 (Tenn. Crim. App. 1975). In *Daniels*, the defendant was charged with driving under the influence of intoxicants. *Daniels*, 531 S.W.2d at 796. The defendant was brought to trial in the general sessions court, where he entered a guilty plea, waived his right to trial by

---

[8] Jeopardy refers to "'the danger of conviction and punishment which the defendant in a criminal prosecution incurs when duly put to trial before a court of competent jurisdiction.'" *State v. Sluder*, 493 S.W.2d 467, 470 (Tenn. 1973) (quoting *Holt v. State*, 24 S.W.2d 886, 887 (Tenn. 1929)).

indictment or presentment, and waived his right to trial by jury. *Id.* After witnesses were sworn in, "the arresting officer moved the court to dismiss the case," and the court granted the motion over the defendant's objection. *Id.* The arresting officer later appeared before a grand jury for the same offenses included in the original warrant, and the grand jury returned a presentment. *Id.* The criminal court sustained the defendant's plea of double jeopardy and dismissed the presentment. *Id.*

On appeal, the issue before the Court of Criminal Appeals was "at what point does jeopardy attach in a nonjury case." *Id.* After reviewing caselaw from other jurisdiction, the Court of Criminal Appeals adopted the following rule:

> [J]eopardy attaches in a nonjury trial when a defendant is placed on trial (1) on an indictment, presentment (or other charging instrument), (2) before a court of competent jurisdiction, (3) before a competent judge who is present and ready to sit as a trier of the facts, (4) after a valid waiver is executed by the defendant, (5) after the entry of his plea, and (6) after the witnesses are sworn, whether they be sworn singly or in a group. We further specifically hold that if the above factors are present, then the hearing of testimony is not a prerequisite to the attachment of jeopardy.

*Id.* at 801-02. Applying these factors, the court concluded that jeopardy attached at the general sessions hearing; the witnesses had been sworn, and the judge "was ready to hear the case." *Id.* at 802. The court applied double jeopardy, referencing "[t]he right not be to be harassed by successive prosecutions in the same case." *Id.*

In the present case, Husband emphasizes the following statement made by the court in *State v. Daniels*:

> In our view, the officer had his opportunity to prosecute the defendant at that time [the general sessions hearing], and no other. Once the officer voluntarily surrendered his case, he was precluded from reinstituting the action by way of a new and separate prosecution.

*Id.* *State v. Daniels* is readily distinguishable from the present case because, here, there has been no second effort to prosecute Husband for criminal contempt. We must recognize the differences between the contempt proceedings at issue and a non-contempt criminal prosecution. Husband and Wife were engaged in a post-divorce dispute, and Wife filed a petition for criminal contempt asserting that Husband had failed to comply with provisions of the MDA, which are part of the court's final divorce decree. Husband was not being accused of conduct that would constitute a crime under Tennessee law. Wife's attorney was "prosecuting" the criminal contempt petition. After the court had heard the testimony, the court encouraged the parties to reach a settlement, and the parties returned to announce that they had reached an agreement.

In *Ahern v. Ahern*, 15 S.W.3d at 75, our Supreme Court addressed double jeopardy in the context of criminal contempt charges in a post-divorce proceeding, and the Court found that double jeopardy prohibited a retrial. Judge D'Army Bailey, in Division 8 of the Shelby County Circuit Court, entered the parties' original divorce decree in 1993. *Ahern*, 15 S.W.3d at 76. In 1996, the wife filed a petition for writ of scire facias alleging that the husband was in willful civil and criminal contempt of the divorce decree. *Id.* Before the contempt charges were heard, Judge Bailey transferred the case to Judge Kay Robilio in Division 5 of the Shelby County Circuit Court. *Id.* Judge Robilio began the trial, and the wife testified. *Id.* After a recess during the wife's testimony, "Judge Robilio sua sponte transferred the case back to Division 8." *Id.* The proceedings were then "recommenced in Division 8 before Judge Bailey." *Id.* In Division 8, the husband moved for dismissal on double jeopardy grounds or transfer of the case back to Division 5. *Id.* Judge Bailey ruled that the husband had waived his double jeopardy claim, and the bench trial proceeded to a conclusion. *Id.* at 76-77. Judge Bailey entered an order finding the husband in criminal contempt. *Id.* at 77. On appeal, the Court of Appeals ruled that the husband had waived the double jeopardy claim by failing to object in Division 5. *Id.* at 77-78.

The matter was appealed to the Supreme Court, and the Court held that double jeopardy prevented the retrial in Division 8. *Id.* at 81-82. The Court stated the rule that "jeopardy attaches when the first witness testifies." *Id.* at 80. Because the husband testified in Division 5 prior to the transfer to Division 8, jeopardy attached. *Id.* at 81. The Court then went on to determine the applicability of two of the available exceptions to double jeopardy: consent and manifest necessity. *Id.* at 80-82. The Court concluded that neither exception was applicable and, therefore, the trial court erred in denying the husband's motion to dismiss on double jeopardy grounds. *Id.* at 81.

In the present case, both parties discuss the issue of whether the consent exception applies. We deem it unnecessary to consider the exceptions here because the matter is factually distinguishable from *Ahern*. In *Ahern*, the case was transferred to another court and a different judge for *retrial*. Here, the matter remains in the same court, and Husband seeks to have the same judge who heard the evidence make a ruling. There is no second prosecution or seeking the advantage of a different forum.

Husband in the present case appears to be asserting that any further proceedings in the criminal contempt matter would constitute a second prosecution. This argument hinges upon the effect of Wife's statement to the court that she was "nonsuiting with prejudice"[9] her criminal contempt petition. Husband seems to take the position that this statement was binding and that double jeopardy prevents further proceedings. The nonsuit with prejudice was announced as part of a settlement agreement between the parties.

---

[9] Tennessee Rule of Civil Procedure 41.01 addresses voluntary dismissals "without prejudice." Because the proposed dismissal in this case was "with prejudice," Tenn. R. Civ. P. 41.01 does not apply.

In *Harbour v. Brown for Ulrich*, 732 S.W.2d 598 (Tenn. 1987), our Supreme Court considered the power of a court to enter a consent judgment and adopted the following rule:

> "The power of the court to render a judgment by consent is dependent on the existence of the consent of the parties at the time the agreement receives the sanction of the court or is rendered and promulgated as a judgment."

*Harbour*, 732 S.W.2d 598, 599 (Tenn. 1987) (quoting 49 C.J.S. *Judgments* § 174(b)). This Court has subsequently held that consent of the parties is not required at the time of the entry of judgment if the parties' agreement existed at the time when the court approved the agreement. *Stricklin v. Stricklin*, 490 S.W.3d 8, 14 (Tenn. Ct. App. 2015); *Env't Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 536-37 (Tenn. Ct. App. 2000). For an oral agreement to be enforceable under this rule, however, "[t]he parties' prior oral agreement must have been made 'in open court' or in a 'hearing' wherein the fact and the terms of the agreement were determined," and "the terms of the agreement must also be reflected in the record." *Env't Abatement*, 27 S.W.3d at 537 (quoting 49 C.J.S. *Judgments* § 185 (1997)). In the present case, the parties did not announce the terms of the agreement in detail; in particular, the parties did not describe the terms of any agreement regarding the use of the 529 funds. Therefore, there was no binding consent agreement, and Wife's counsel's statement that the contempt petition was dismissed with prejudice is of no effect.

For all of these reasons, we conclude that double jeopardy has no application in this case and that the matter should be remanded to the trial court for a ruling on the remaining counts of Wife's petition for criminal contempt.

CONCLUSION

The judgment of the trial court is reversed, and the matter is remanded for further proceedings in accordance with this opinion. Costs of this appeal are assessed against the appellee, Warren Sevigny, and execution may issue if necessary.

_/s/ Andy D. Bennett_____
ANDY D. BENNETT, JUDGE

- 9 -